IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISTINA LYNN STRICKLAND,                    No. 3:15-cv-02205-HZ

              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting                   OPINION & ORDER
Commissioner of Social Security,

              Defendant.


Merrill Schneider
SCHNEIDER KERR LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

        Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97203-2902


1 - OPINION & ORDER

Martha A. Boden
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Listina Strickland brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).  I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

    Plaintiff applied for SSI on April 24, 2012, alleging an onset date of December 31, 2004. Tr. 201-06.  Her application was denied initially and on reconsideration.  Tr. 125-28 (initial); 13-37 (reconsideration).  On February 24, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ).  Tr. 42-68.  On March 20, 2014, the ALJ found Plaintiff not disabled.  Tr. 9-34.  The Appeals Council denied review.  Tr. 1-6.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on having anxiety, post-traumatic stress disorder (PTSD), tremors, depression, stress, and psychosis.  Tr. 308.  At the time of the hearing, she was forty-five years old.  Tr. 46.  She completed eighth grade and has past relevant work experience as a meat counter sales clerk.  Tr. 26, 47, 63.

/ / /

2 - OPINION & ORDER

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

3 - OPINION & ORDER

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  <u>Yuckert</u>, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since her application date.  Tr. 14.  Next, at step two, the ALJ determined that Plaintiff

has severe impairments of major depressive disorder, partial remission; PTSD; and

methamphetamine abuse, remission.  <u>Id</u>.  However, at step three, the ALJ found that her

impairments did not meet or equal, either singly or in combination, a listed impairment.  Tr.  15-

16.

At step four, the ALJ concluded that Plaintiff has the RFC to perform a full range of work

at all exertional levels, but with the following nonexertional limitations:

> She can sustain attention and concentration for short, simple instructions and
> work-like procedures.  She would work best in a routine, predictable work
> environment without a requirement of executive decision-making.  She should
> have no more than occasional contact with the public.  She can engage in brief,
> normal interaction with coworkers and supervisors.  She should avoid
> concentrated exposure to environmental irritants, i.e. dust, gases, and fumes in
> work place.  She would work best at occupations that are highly structured,
> repetitive, and sequential.

Tr. 17.

With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past

relevant work.  Tr. 26.  However, at step five, the ALJ determined that Plaintiff is able to perform

jobs that exist in significant numbers in the economy such as room cleaner, laundry worker, and

agricultural produce sorter.  Tr. 27.  Thus, the ALJ determined that Plaintiff is not disabled.  Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal

quotation marks omitted).  The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v.

Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) rejecting Plaintiff's

subjective testimony as not entirely credible; (2) failing to find certain impairments severe at step

two; (3) improperly rejecting medical practitioners' opinions; (4) improperly rejecting lay opinion

testimony; and (5) as a result of these alleged errors, improperly concluding at step five that she

is not disabled.

5 - OPINION & ORDER

I.  Credibility Determination

The ALJ is responsible for determining credibility.  Vasquez, 572 F.3d at 591.  Once a

claimant shows an underlying impairment and a causal relationship between the impairment and

some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony

if there is no evidence of malingering.  Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir.

2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes

objective medical evidence establishing that the claimant suffers from an impairment that could

reasonably produce the symptoms of which he complains, an adverse credibility finding must be

based on 'clear and convincing reasons'"); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th

Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines

whether there is "objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged"; and second, if the

claimant has presented such evidence, and there is no evidence of malingering, then the ALJ

must give "specific, clear and convincing reasons in order to reject the claimant's testimony about

the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations,

the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may

also consider the ability to perform household chores, the lack of any side effects from prescribed

medications, and the unexplained absence of treatment for excessive pain.  Id.; see also

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many

factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning

the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained

or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

and (3) the claimant's daily activities.") (internal quotation marks omitted).

> As the Ninth Circuit explained in Molina;
>
> > In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation.  For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

Plaintiff does not dispute that the ALJ engaged in the required two-step inquiry.  But, she

argues that the reasons provided by the ALJ are not supported by the record or are insufficient.

The ALJ relied on the following reasons to find that Plaintiff's subjective limitations

testimony was not fully credible:

> (1) the testimony is not supported by the objective medical record;
>
> (2) her alleged limitations are inconsistent with her activities of daily living;
>
> (3) she received only conservative and routine treatment for her impairments;
>
> (4) she has not fully complied with medical treatment;

(5) she left previous employment for reasons unrelated to her impairments;

(6) she is not motivated to work consistently;

(7) her criminal history creates "significant issues regarding the sincerity and truthfulness of her application and testimony" and "[h]er repeated willingness to steal brings into question the sincerity of her application";

(8) her history of polysubstance abuse "raises the question of whether she is motivated to improve her functional ability"; her current tobacco use and past illegal drug use "weakens her credibility because it shows a pattern of voluntary injurious behavior"; and her heavy and voluntary use of mind-altering illegal drugs shows "willful neglect of her physical and mental condition";

(9) the credibility of her testimony is eroded by her inconsistent statements;

(10) she has actively sought employment despite her acknowledged awareness of mental health symptoms which suggests she is aware of her limitations and believes she can work despite them; and

(11) she has worked after her alleged onset date, suggesting a higher level of functioning than alleged in her application and testimony.  Tr. 18-23.

Plaintiff first argues that "substantial evidence of psychological counseling" undermines the ALJ's findings that Plaintiff has received only conservative and routine treatment.  Pl.'s Op. Brief 15.  Plaintiff provides no citations to the record to support her contention.  The record shows that although she alleges disability commencing in December 2004, she did not seek mental health counseling until late 2011.  Tr. 476, 562.  On October 24, 2011, she received an intake evaluation from Western Psychological & Counseling Services recommending weekly

counseling sessions.  Tr. 504.  Those sessions do not appear to have started until December 12, 2011.  Tr. 504-30; Tr. 520.  After that first session, she went fairly regularly, sometimes once per week and sometimes once every two or three weeks.  Tr. 504-30.  In April 2012, she was evaluated for medication and was prescribed Lexapro.  Tr. 523-26.  She continued with her counseling sessions, more or less on the same schedule, to June 2013.  Tr. 504-30, 531-35, 549-57, 569-627 (showing, however, no appointments from December 17, 2012 to March 4, 2013).  At her November 28, 2012 counseling session, she was noted to have been making progress in looking for work and continuing to seek out support from her family and friends.  Tr. 549.  The clinician's assessment was that Plaintiff appeared to be doing better.  Id.  In June 2013, her counseling was terminated because she was no longer actively engaged with her therapist and had a poor commitment to therapy.  Tr. 596, 597.  Her June 20, 2013 Case Closure Summary states that treatment was effective because Plaintiff was better able to reduce her depressive symptoms and learned to better manage her PTSD symptoms.  Tr. 569.  She was assessed a Global Assessment of Functioning (GAF) score of 52.  Id.; see also Tr. 596 (June 4, 2013 Case Closure Summary by Western Psychological Psychiatric Mental Health Nurse Practitioner Kerry Phifer noting GAF score of 57).

In late January 2014, Plaintiff returned to Western Psychological for another evaluation. Tr. 620-26.  The recommended treatment plan was for individual counseling one to four times per month.  Tr. 618.  The record shows she attended one counseling session on February 4, 2014. Tr. 627.  On February 10, 2014, Plaintiff canceled her session for the next day.  Tr. 626.  There are no other counseling records from Western Psychological or from other mental health treatment providers for treatment after February 2014.

9 - OPINION & ORDER

Contrary to Plaintiff's argument, the record supports the ALJ's determination that she received conservative and routine treatment for her mental health symptoms. As noted, despite an alleged onset date back to December 2004, she did not receive psychological counseling until December 2011. She attended sessions and took Lexapro, an anti-depressant medication. She stopped attending after one and one-half years. Her closing summary shows that treatment was effective and she was satisfied. As the ALJ noted, she has not been hospitalized. Her treatment was routine. As a result, the ALJ did not err in determining that her treatment was inconsistent with Plaintiff's testimony regarding the severity of her symptoms.

Plaintiff also argues that the ALJ erred in concluding that Plaintiff's daily activities are inconsistent with her subjective allegations. The ALJ found that Plaintiff's daily activities were "quite involved." Tr. 21. He cited to evidence in the record that she spends time "cleaning and organizing," walking her dog, watching television, planning dinner, finding new recipes, planting flowers, reading, gardening, beading, shopping for groceries with friends, going out to the library, restaurants, and religious services, and performing household chores such as sweeping, mopping, vacuuming, and putting dishes away. Tr. 21. She manages finances. Id. She also takes care of her hygiene and grooming and showers daily. Id.

Plaintiff does not contend that the ALJ's recitation of her activities is wrong. Rather, she argues that her activities are only modest and that they are not inconsistent with her claimed limitations. The ALJ noted that Plaintiff claimed she could not work because of her anxiety, PTSD, tremors, depression, stress, and psychosis. Tr. 17. Plaintiff explained that she could not work because she cannot focus or remember details, she shakes constantly, she has worsening social anxiety, stays at home, and relies on her boyfriend or daughter to make her food. As

10 - OPINION & ORDER

<u>Molina</u> explains, even if a claimant's activities show some difficulty functioning, they may still discredit a claimant's testimony when they contradict claims of complete debilitation. 647 F.3d at 1113. Such is the case here. For example, Plaintiff's activity of going out to various places undermines her assertion that she is crippled by social anxiety. Her reading activity and managing of finances undermines her assertion that she cannot focus. The ALJ's determination is supported by substantial evidence in the record.

Plaintiff also attacks the ALJ's finding that Plaintiff's testimony was not credible because the record showed she was not motivated to work consistently. The ALJ noted that Plaintiff had a sporadic work history with limited earnings before the alleged onset of disability. Tr. 22. This evidence suggested that factors other than her alleged impairments affect her ability to maintain full-time employment. <u>Id.</u> Plaintiff argues that there are alternative reasons for her poor history that do not implicate her motivation to work, including caring for her daughter. That claimant posits an alternative interpretation of the record does not mean that the ALJ erred. The court upholds the ALJ's rational interpretation of the record even when the evidence may be interpreted differently. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Here, the ALJ offered a rational interpretation of the record and thus did not err in finding that Plaintiff's poor work history undermines her claim of disabling symptoms.

Plaintiff next contends that in regard to the ALJ's finding that Plaintiff's credibility was undermined by her having ended previous employment for reasons unrelated to her impairments, "mental health symptoms were likely large contributors." Pl.'s Op. Brief 15. Positing that underlying mental health symptoms were "likely" contributors is not an argument based on the

record.  Moreover, it is inconsistent with the fact that the events noted by the ALJ occurred before Plaintiff sought mental health counseling.  With her mental health symptoms not forcing her to seek treatment, the ALJ's interpretation that she left her previous jobs for reasons unrelated to her impairments is based on substantial evidence in the record.

Plaintiff also argues that her work and job search, cited by the ALJ as a basis for finding her not credible, should not be used against her because she asserts only that she cannot work on a regular continuing basis, not that she is incapable of all work activity.  The ALJ cited to several places in the record where it was reported that Plaintiff was looking for work.  Tr. 23 (citing 549, 555, 559, 606).  There is no evidence in the record that any of the positions she was applying for, including jobs as a dishwasher, fast food worker, waitress, or store employee, were not work on a regular continuing basis.  Thus, the ALJ did not err in interpreting the record as indicating that despite alleged disabling symptoms, Plaintiff was looking for work that was inconsistent with her subjective limitations.

Plaintiff makes no separate argument regarding the ALJ's finding that her subjective limitations testimony is not supported by the objective medical record.  In support of this finding, the ALJ noted that her psychiatric symptoms had improved with counseling and medication, her major depressive disorder is in partial remission, and her methamphetamine abuse is in remission.  Tr. 21.  The ALJ also noted that there was no evidence in the record for the alleged occasional visual hallucinations Plaintiff testified about at her hearing.  Id.

Plaintiff does not dispute the ALJ's recitation of this evidence.  The ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated

by the objective medical evidence.  20 C.F.R. §§ 404.1529(c), 416.929(c); Rollins v. Massanari,

261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence

of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based

solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] .

. . While subjective pain testimony cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence, the medical evidence is still a relevant factor in

determining the severity of the claimant's pain and its disabling effects.") (internal quotation

marks and brackets omitted).

     As discussed above, many of the reasons provided by the ALJ in support of his credibility

finding are supported by substantial evidence in the record.  This allows the ALJ to also look to

inconsistencies with the objective medical evidence which, as the ALJ here described, do not

support Plaintiff's subjective testimony.  Therefore, the ALJ did not err in concluding that

Plaintiff's subjective limitations testimony was not entirely credible.

II.  Medical Professionals' Opinions

     Plaintiff argues that the ALJ improperly rejected the opinions of treating psychologist Dr.

Matthew De Haan, Psy.D, examining psychologist Dr. Robinann Cogburn, Ph.D, nonexamining

physician Dr. Linda Jensen, M.D., and examining psychologist Dr. John D. Adler, Ph.D.

     Social security law recognizes three types of physicians:  (1) treating, (2) examining, and

(3) nonexamining.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  Generally, more

weight is given to the opinion of a treating physician than to the opinion of those who do not

actually treat the claimant.  Id.; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  And, more

weight is given to an examining physician than to a nonexamining physician.  Garrison, 759 F.3d

at 1012.

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in Ryan). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Id. (quoting Bayliss, 427 F.3d at 1216).

A.   Dr. De Haan

Dr. De Haan was Plaintiff's counselor at Western Psychological where she obtained counseling from December 2011 to June 2013.  He saw her more than two dozen times in approximately eighteen months.  Tr. 504-35, 549-57, 569-627.  Plaintiff states that in January 2013, Dr. De Haan assessed her with a GAF score of 48.  Tr. 573-74.  She notes that according to the Diagnostic and Statistical Manual of Mental Disorders, a GAF score between 41 - 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning."  Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 4th ed. Text Rev. (2000) (DSM–IV–TR) 34.  She states that the ALJ made only a passing reference to Dr. De Haan's reports, effectively disregarding his opinion.  She argues that Dr. De Haan's findings show she suffers from serious limitations and symptoms despite mental health treatment.  She contends that the rejection of this opinion was improper because the ALJ failed to articulate specific and legitimate reasons for doing so.

The ALJ made more than one reference to Plaintiff's treatment at Western Psychological. He first noted that in April 2012, during her treatment with Dr. De Haan, Nurse Practitioner

Phifer completed a psychiatric evaluation in which Plaintiff was assessed as having a GAF score of 50. Tr. 20 (citing Tr. 526). The ALJ also noted that Plaintiff reported improvement in symptoms with Lexapro and that she exhibited appropriate appearance, cooperative behavior, and affect congruent with mood. Id. (citing Tr. 527). The ALJ remarked that Plaintiff reported benefit with mental health therapy. Id. (citing Tr. 531).

Later in the opinion, the ALJ noted that Plaintiff's case at Western Psychological was closed in June 2013 with ending diagnoses of major depressive disorder, recurrent, moderate, and PTSD. Tr. 21 (citing Tr. 569). Plaintiff had been able to reduce her depressive symptoms and better manage her PTSD, her treatment goals had been met, and she was satisfied. Id. The ALJ noted that her GAF score at the time, as assessed by Dr. De Haan, was 52. Id.

While the ALJ did not discuss Dr. De Haan by name, he did discuss her treatment at Western Psychological and noted that at the conclusion of her treatment, her GAF was 52 and she had achieved her goals. As Defendant states, other than pointing to the January 2013 GAF score, Plaintiff cites to no other "opinion" of Dr. De Haan's which the ALJ allegedly rejected. The GAF score is not dispositive of disability. Garrison, 759 F.3d at 1002 n.4 ("GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability" but "they may be a useful measurement" because they are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). And, it is important to recognize that in the DSM-IV-TR, a score of 48 means "serious symptoms" or "serious impairment in social, occupational, or school functioning." DSM-IV-TR 34. Here, the January 2013 assessment cited by Plaintiff details Plaintiff's symptoms and thus, the score of 48 appears to reflect the assessment of the severity of

her symptoms, not her functional limitation.

Given that a GAF score is not determinative of disability or functioning, that the score in this case was assessed in the context of describing Plaintiff's symptoms, and that the ALJ discussed her treatment with Western Psychological and noted two other GAF scores, one of which, rendered at the conclusion of her successful treatment, reflects moderate, not severe, symptoms or moderate limitations in social functioning, the ALJ did not err in his consideration of Dr. De Haan's treating relationship with Plaintiff.

B.  Dr. Cogburn

Dr. Cogburn examined Plaintiff in March 2013 to assess her occupational capacity and rehabilitation needs.  Tr. 558-68.  The evaluation consisted of a clinical interview, mental status observations, review of records, and psychological testing.  Id.  In relevant part, Dr. Cogburn's testing "revealed very significant deficits in executive functions."  Tr. 566; see also Tr. 564 (discussing results of specific executive function testing).  Dr. Cogburn noted that Plaintiff's "[e]xecutive function deficits may affect functional abilities across multiple domains."  Tr. 567. Then, in her Recommendations section, Dr. Cogburn made the following remarks:

> 1. . . .  [T]he severity of her executive function deficits raises significant questions[s] as to whether she will be able to succeed in competitive employment. Her executive function impairment is likely to affect her performance broadly. She is likely to have difficulty organizing tasks independently, solving problems as they arise, and adapting to changes in procedures or assignments.  She is likely to benefit from close supervision and assistance with organization and structure, but even with these she may have difficulty consistently organizing her behavior to complete tasks.
>
> 2. If competitive placement is attempted, [Plaintiff] is likely to succeed most easily in occupations where tasks are highly structured, repetitive, and sequential (i.e., one task is completed before another is begun).  She is likely to perform most successfully in a setting where there are few distractions or interruptions.

16 - OPINION & ORDER

3.  A job-coach is likely to be helpful in training Ms. Strickland in a new position.

Tr. 567-68.

In his decision, the ALJ noted several of Dr. Cogburn's recommendations and gave her

opinion "great weight" as it was "generally supported by the evidence of record."  Tr. 25.

Accordingly, the ALJ explained, the RFC limits Plaintiff to "short, simple instructions and work-

like procedures."  Id.  The RFC also noted that Plaintiff would work best in a routine, predictable

work environment without a requirement of executive decision-making.  Id.  She was restricted

to occasional public contact and "brief, normal interaction with coworkers and supervisors."  Id.

Finally, the RFC noted that she would "work best at occupations that are highly structured,

repetitive, and sequential."  Id.

Plaintiff argues that although the ALJ gave Dr. Cogburn's opinion "great weight," the ALJ

failed to include key aspects of that opinion in his RFC.  Plaintiff notes that the RFC fails to

mention close supervision and assistance with organization and structure and it omitted any

requirement of a job coach for training.  Plaintiff also notes that one of Dr. Cogburn's diagnostic

impressions was "Cognitive disorder NOS, deficit in executive functions."  Tr. 566.  Yet, the

ALJ did not include this as a severe impairment at step two.  Plaintiff argues that the ALJ's

failure to include all of Dr. Cogburn's limitations while according her opinion "great weight," is

an effective rejection of the portions of the opinion not included in the RFC.  Because the ALJ

failed to give an explanation for the rejection, the ALJ erred.

In response, Defendant argues that the ALJ's limitations to simple, highly structured,

repetitive, and sequential work without executive decision-making incorporated Dr. Cogburn's

limitations of close supervision and assistance with organization and structure.  According to

Defendant, "[i]t is implicit that an individual working in a highly structured setting has received close supervision and assistance with structure." Def.'s Brief 12. Additionally, Defendant responds to the step-two argument by contending that because all of Dr. Cogburn's functional limitations were incorporated into the RFC, any omission of a cognitive impairment at step two is harmless.

Defendant's argument is unconvincing. Plaintiff correctly asserts that Defendant provides no basis for its contention that "it is implicit that an individual working in a highly structured setting has received close supervision and assistance with structure." Defendant gives no examples and cites no authority for this proposition. While the RFC's inclusion of a limitation to "highly structured" work arguably accounts for Dr. Cogburn's limitation to highly structured tasks, nothing about that limitation implicitly addresses a limitation to close supervision and assistance with organization and structure. The jobs identified by the VE, such as "room cleaner for housekeeping," tr. 65, are to my knowledge often performed independently. In fact, the ALJ's RFC limits Plaintiff to brief, normal interaction with supervisors. With that, Defendant's position that the "highly structured" limitation implicitly includes a close supervision and assistance with organization and structure limitation must be rejected.

Additionally, Defendant's argument does not even mention the job coach limitation. Because the ALJ assigned Dr. Cogburn's opinion "great weight," the RFC's omission of this limitation without explanation was error. Furthermore, the error of omitting Plaintiff's cognitive impairment as a severe impairment at step two is not harmless. Defendant is correct that where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless. Lewis v.

18 - OPINION & ORDER

Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, however, for the reasons discussed, the full range of limitations assessed by Dr. Cogburn were not part of the RFC. Thus, the error is not harmless.

C.  Dr. Jensen

Dr. Linda Jensen, M.D., is a nonexamining physician who rendered an opinion in 2010 on a previous disability application. Tr. 71-82. As part of that opinion, she concluded that Plaintiff was limited to occasional fingering and handling due to tremor. Tr. 77-79. The ALJ rejected this portion of Dr. Jensen's opinion because Plaintiff's activities of daily living do not suggest limitations caused by tremor. Tr. 24. In support, the ALJ cited to Plaintiff's ability to clean and organize, walk the dog, plant flowers, prepare meals, sweep, mop, vacuum, put dishes away, garden, bead, dine out, use public transportation, and attend to hygiene and grooming. Id. The ALJ found that Plaintiff was able to perform numerous activities despite the tremor. Id.

Plaintiff argues that the ALJ erred because many of the activities noted by the ALJ require no more than occasional fingering and handling and thus, there is no inconsistency between her activities and her tremor. Defendant points to several activities which were reasonably interpreted by the ALJ as requiring more than occasional fingering and handling, including planting flowers, organizing things, putting dishes away, working with beads, and unimpeded personal grooming. I agree with Defendant that the ALJ's interpretation of the record was rational and thus, I credit it over Plaintiff's alternative interpretation of the record.

D.  Dr. Adler

Dr. Adler evaluated Plaintiff on August 21, 2009. Tr. 426-31. He conducted a personal interview and reviewed records. Id. He diagnosed her with anxiety disorder NOS, learning

disorder NOS, and alcohol abuse in remission.  Tr. 428.  He remarked that the evidence was "most consistent with impairment tied to problems with coping and anxiety," and some problems responding to stressors.  Id.  She also exhibited some "mental skills" problems with verbal skills and calculation which he referred to as "cognitive skill problems."  Id.  Plaintiff argues that although the ALJ discussed Dr. Adler's opinion, the ALJ failed to incorporate his diagnoses or his assessed limitations and thus, the ALJ effectively rejected the opinion.

The ALJ discussed Dr. Adler's evaluation, including what Plaintiff reported to Dr. Adler, the results of his mental status examination, and his conclusions.  Tr. 18-19.  Although the ALJ did not again expressly refer to Dr. Adler's evaluation, it is clear from reading the ALJ's opinion that when the ALJ later referred to "[t]hese objective medical findings," as supporting certain functional limitations, he was referring to all of the medical evidence he had discussed in the previous pages, including Dr. Adler's evaluation. Tr. 21.  The ALJ explained that his RFC accounts for the functional limitations caused by her psychiatric deficits.  Id.  He concluded that the limitations to short, simple instructions and work-like procedures, a routine, predictable work environment without a requirement of executive decision-making, no more than occasional contact with the public, only brief, normal interaction with coworkers and supervisors, and an occupation that was highly structured, repetitive, and sequential, accounted for the limitations he found she experienced as a result of her mental health issues.  Id.

Unlike Dr. Cogburn, Dr. Adler offered no opinion about any actual functional limitations he believed were caused by Plaintiff's impairments.  The closest he came was acknowledging that it was "very possible" that she had "concentration problems" as well as unspecific "cognitive skills problems and claims of learning problems when in school[.]" Tr. 428.  The ALJ's

20 - OPINION & ORDER

discussion of the evidence makes clear that the ALJ incorporated whatever assessments Dr. Adler gave into the RFC. I agree with Defendant that the limitations of short, simple, routine, predictable, structured, repetitive, sequential work without executive decision-making, and with limited contact with public as well as coworkers and supervisors, sufficiently addressed Dr. Adler's assessment. The ALJ did not err.

III. Step-Two Finding

Plaintiff argues that the ALJ erred by failing to find various impairments severe at step two. Specifically, she contends that she suffers from severe impairments of cognitive disorder/learning disorder, borderline personality disorder, psoriasis, tremors, and anxiety disorder. She argues that the ALJ's error was harmful because the limitations emanating from these impairments, in combination with her other severe impairments, preclude her from maintaining competitive employment.

The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. Id.

A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1521(b), 416.921(b). In Social Security Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3), the Commissioner has

explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[;]" see also SSR 96-3p (available at 1996 WL 374181, at *1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

Defendant responds that Plaintiff's argument is conclusory and that even if the ALJ erred, the error is harmless because the RFC adequately accommodated a cognitive disorder or personality disorder.  E.g., Lewis, 498 F.3d at 911 (where the ALJ considered evidence of limitations posed by claimant's bursitis at step four of the disability analysis, any error in failing to consider bursitis "severe" at step two was harmless).

For the reasons explained in the discussion of Dr. Cogburn's opinion, I agree with Plaintiff that the ALJ erred by failing to find her cognitive disorder a severe impairment at step two and further, that the error was not harmless.  However, as to the learning disorder and anxiety disorder, both of which were assessed by Dr. Adler, I reject Plaintiff's argument because as previously discussed, Dr. Adler's assessments were fairly incorporated into the RFC.  Thus, any error is harmless.  As to the borderline personality disorder, this was a provisional diagnosis rendered in 2010 by Karen Bates-Smith, Ph.D.  Tr. 474-78; Tr. 478-79 (explaining that the borderline personality disorder diagnosis was provisional because of Plaintiff's credibility problems).  She assessed no particular functional limitations as a result and expressly noted she did not believe there was a cognitive diagnosis and Plaintiff was able to understand and remember instructions.  Plaintiff offers no basis for concluding that the RFC did not account for Dr. Bates-Smith's diagnosis and thus, any error by omitting the diagnosis as a severe impairment

22 - OPINION & ORDER

at step two was harmless.

As to Plaintiff's psoriasis, the ALJ noted the December 2009 diagnosis of the condition and the recommendation of light therapy. Tr. 14. He found that the record showed that the psoriasis, considered singly or together with other impairments, caused only transient and mild symptoms and limitations, existed for less than twelve months, was well controlled with treatment, or otherwise not adequately supported by the medical evidence in the record. Tr. 14-15.

In contending that the ALJ erred at step two in regard to the psoriasis diagnosis, Plaintiff cites to certain medical records in the Administrative Record. Pl.'s Op. Brief 11 (citing Tr. 452-58, 632-35). These records, however, support the ALJ's conclusion rather than detract from it. In December 2013, Dr. Kar-Yee Wu noted Plaintiff's psoriasis diagnosis and that she took Enbrel for it, but there is no other mention of any problems associated with the disease. Tr. 632. There is a notation of Plaintiff's concern of "bumps" under her arms for five months and a new one in her groin but it is unclear if those are related to psoriasis. Id. In any event, no apparent treatment was ordered other than the application of heat. Tr. 632-34. In February 2014, Plaintiff reported that the bumps had improved. Tr. 635.

In the other cited records which are from late 2009 to early 2010, there is a diagnosis of psoriasis, mention of plagues in the scalp, neck, face, and back, and a discussion of light therapy. Tr. 452-58. Plaintiff then started treatment with Humira. Id. By February 2010, she reported a 70% improvement on that drug. Tr. 452.

The records cited by Plaintiff in support of her argument show only occasional reference to the problem at doctor's appointments, show improvement with treatment, and fail to show any

23 - OPINION & ORDER

functional limitations as a result of the impairment.  Therefore, the ALJ did not err in concluding that Plaintiff's psoriasis was a non-severe impairment at step two.

Finally, the last step-two argument is addressed to Plaintiff's tremor.  Plaintiff cites to four places in the Administrative Record to support her arguments that the ALJ erred at step two in failing to find her hand tremor a severe impairment and that the error was not harmless.  The first record cited is the 2010 opinion by Dr. Jensen.  However, for the reasons explained above, the ALJ did not err in rejecting her opinion that Plaintiff was limited to occasional fingering and handling.  Next, Plaintiff cites to a vague reference in 2013 vocational rehabilitation records to a hand tremor for which there was no medical explanation.  Tr. 385.  This reference does not establish any limitations from the tremor.  Plaintiff then cites to a 2003 diagnosis from a neurologist who opined she had "essential tremor" and who prescribed a beta blocker medication for treatment.  Tr. 406.  There is no functional limitation opinion from the physician and no subsequent record indicating whether Plaintiff took the medication and if she did, if it was effective.

The last record Plaintiff points to is a 2013 chart note from her primary care physician Dr. Wu who did not list a tremor in the list of diagnoses but who noted a "fine tremor" upon physical examination.  Tr. 632-33.  As with several of these records, no functional limitations are indicated.  Plaintiff is correct that there are references in the record to a hand tremor.  However, other than the occasional fingering and handling limitation given by Dr. Jensen which the ALJ did not improperly reject, the remaining records Plaintiff cites include one vague reference, a reference from a treating physician to a fine tremor but no diagnosis listed, and a record which shows a hand tremor but one for which treatment was recommended.  Without other records

24 - OPINION & ORDER

supporting functional limitations, the ALJ did not err in concluding that Plaintiff's hand tremor

was not a severe impairment at step two.

IV. Lay Witness Testimony

      Plaintiff argues that the ALJ erred by failing to fully credit the statements of two lay

witnesses.  In a 2009 Third Party Function Report, Plaintiff's friend Suzan Cummins indicated

that Plaintiff had problems with everyday activities, needed reminders to take medication and

complete chores, was withdrawn from friends, and had conditions affecting her memory,

concentration, and understanding.  Tr. 248-55.  She noted Plaintiff's problems with walking,

completing tasks, using her hands, and getting along with others.  Id.  She had difficulty handling

stress and changes in routine.  Id.  Cummins also remarked on Plaintiff's challenges in cooking,

performance of household chores, inability to finish tasks, and in handling stress.  Id.

      The ALJ gave Cummins's report only limited weight because it conflicted with the

evidence of record.  Tr. 25.  For example, while Cummins stated that Plaintiff could commute

only by walking and riding with others, the records showed that Plaintiff used public

transportation.  Id.  In contrast to Cummins's report that Plaintiff could not go out alone, the

record showed that she did.  Id.  Cummins stated that Plaintiff could not drive because her hands

were shaky.  Tr. 251.  The records showed that instead, Plaintiff did not drive because her license

was suspended.  Tr 25.

      In May 2010, Tomeo Takemoto, the mother of Plaintiff's boyfriend, also completed a

Third Party Function Report.  Tr. 279-86.  She noted that Plaintiff shook a lot, had a short

temper, needed reminders to go places, had problems getting along with others, and engaged in

few social activities.  Id.  Her conditions affected her memory, her ability to complete tasks, and

25 - OPINION & ORDER

her concentration.  Id.  She could not handle stress and changes in routine.  Id.

The ALJ gave some weight to Takemoto's statement, noting that it was generally consistent with the record.  Tr. 26.  The ALJ did not give the report full weight, however, because of its inconsistencies with Plaintiff's getting along well with friends, getting along with her brother, going food shopping with a friend, and attending religious services twice per month. Id.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."  Molina, 674 F.3d at 1114.  The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses.  Valentine, 574 F.3d at 694.

Without citing to any specific part of the ALJ's lay witness discussion or to any part of the record, Plaintiff argues, in conclusory fashion, that the ALJ committed error by "failing to give reasons that are germane to each witness[.]"  Pl.'s Op. Brief 12.  With no specifics, Plaintiff asserts generally that the "ALJ disregard[ed] the evidence of record."  Id.

Inconsistency with the evidence is a germane reason for discounting lay witness testimony.  Bayliss, 427 F.3d at 1218; see also SSR 06-3p, at * 5, (available at 2006 WL 2329939) ("For opinions from sources such as teachers, counselors, and social workers who are not medical sources . . . it would be appropriate to consider such factors as . . . whether the opinion is consistent with other evidence[.]").  Here, the ALJ cited to evidence in the record which conflicted with specific statements made by the lay witnesses.  The ALJ's failure to fully credit the testimony of each witness was supported by reasons germane to each witness.  The ALJ did not err.

V.  Remand

In social security cases, remands may be for additional proceedings or for an award of

benefits.  E.g., Garrison, 759 F.3d at 1019 (9th Cir. 2014) (explaining that if "additional

proceedings can remedy defects in the original administrative proceeding, a social security case

should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a

determination by the Commissioner with instructions to calculate and award benefits") (internal

quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test.

Id. at 1020; see also Treichler v. Comm'r, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has

three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence,

whether claimant testimony or medical opinion.  Garrison, 759 F.3d at 1020.  Second, the record

must be fully developed and further administrative proceedings would serve no useful purpose.

Id.  Third, if the case is remanded and the improperly discredited evidence is credited as true, the

ALJ would be required to find the claimant disabled.  Id.  To remand for an award of benefits,

each part must be satisfied.  Id.; see also Treichler, 775 F.3d at 1101 (when all three elements are

met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from

the ordinary remand rule" of remanding to the agency).  The "ordinary remand rule" is "the

proper course" except in rare circumstances.  Treichler, 775 F.3d at 1101.

Plaintiff argues that the case must be remanded for a determination of benefits.  She

contends that a proper evaluation of the evidence warrants a finding of disability because there is

no additional evidence to collect and once the improperly rejected evidence is considered, it is

clear that Plaintiff meets the statutory definition for disability.  Defendant argues that this is not a

27 - OPINION & ORDER

case with rare circumstances supporting a remand for benefits.  Instead, Defendant argues that

even if it is determined that the ALJ improperly evaluated the evidence, there are still outstanding

issues requiring resolution.

I agree with Defendant.  The only error at issue is the failure to include all of Dr.

Cogburn's limitations or at least to explain why the limitations of close supervision, assistance

with organization and structure, and a job coach for training were omitted from the RFC when

the ALJ had given the opinion great weight.  As explained above, it is inconsistent to endorse the

opinion and then fail to include all of its limitations absent an explanation.

While the ALJ's error requires remand, the record does not establish one way or the other

whether Plaintiff would or would not be disabled at step five if the close supervision,

organization, and structure assistance limitations were added to the RFC.  The vocational expert

testimony suggests that the job coach limitation would preclude competitive employment.  Tr.

67.  However, it is important to note that the job coach limitation provided by Dr. Cogburn was

that it was "likely to be helpful" to Plaintiff.  Because that statement is somewhat ambiguous in

that it could be viewed as a discretionary recommendation or it could be viewed as imperative to

Plaintiff's ability to function in a competitive environment, it does not conclusively establish

disability.  Accordingly, it is the ALJ in the first instance who should address all of Dr. Cogburn's

limitations and reassess the RFC.  Should the ALJ not incorporate all of her recommendations in

the RFC, he must provide a sufficient explanation for any which are omitted.  If necessary, Dr.

Cogburn can be re-contacted for more specific information on the job coach limitation.  As the

record stands now, remand for additional proceedings is the appropriate course.

/ / /

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____, 2017

_____
Marco A. Hernandez
United States District Judge

29 - OPINION & ORDER